UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GREGORY L. BURDESS, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 4:17-CV-01515 JAR |
| COTTRELL, INC., | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Cottrell, Inc.'s ("Cottrell") Combined Motion to Reconsider or Certify Immediate Interlocutory Appeal. (Doc. 22.) Plaintiffs have responded in opposition (Doc. 24), and Cottrell has replied (Doc. 25).

**Background**

This case concerns a repetitive-use injury sustained by Plaintiff Gregory Burdess, who was employed as a car hauler by Jack Cooper Transport Company ("JCT"). (Doc. 1.) The rigs in the JCT motor carrier fleet were manufactured, designed, and placed into the stream of commerce by sale or otherwise by Cottrell. (*Id.*) Plaintiffs allege that the injury was caused by Cottrell's defective design. (*Id.*)

On April 26, 2013, Burdess awoke at 3 a.m. in a motel room in McLean, Illinois and could not feel his arms. (Doc. 5-3 at 35:15-36:20 (hereinafter "Burdess depo.").) Burdess spent two hours in bed, "trying to roll around and trying to move [his] hands to get the feeling back in [his] hands so he could get out of bed to call the company to tell them." (*Id.* at 35:17-21.) Later that day, Burdess was seen by a doctor in Missouri and was diagnosed with bilateral shoulder

impingement syndrome. (Doc. 1.) Burdess and his wife filed suit approximately four years later. (*Id.*)

Cottrell moved for summary judgment, arguing that the claims were time-barred. (Doc. 5.) It argued that the action originated in Illinois and that Plaintiffs are therefore barred by that state's two-year statute of limitations, rather than Missouri's five-year time limit. (Doc. 5.) The Court denied the motion, finding that Burdess's injury was not "capable of ascertainment" until he was examined by his Missouri doctor. (Doc. 14.) Cottrell now seeks reconsideration of that denial, arguing that the Court's interpretation of the Missouri borrowing statute amounts to a "manifest error of law." (Doc. 22 at 1.) In the alternative, Cottrell seeks an order allowing an interlocutory appeal to the Eight Circuit to decide the issue. (*Id.* at 10.)

**Legal Standards**

"A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e)." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). "Rule 59(e) motions serve the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.'" *Id.* (quoting *Innovative Home Health Care v. P. T.-O. T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998)). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Bracht v. Grushewshy*, No. 4:04CV1286 HEA, 2007 WL 43847, at *1 (E.D. Mo. Jan. 4, 2007) (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988)).

Meanwhile, under 28 U.S.C. § 1292(b), if a district court concludes that its order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the

2

ultimate termination of the litigation," it may certify the question to the circuit court for immediate review. Either Court may then stay the district court proceedings by written order. 28 U.S.C. § 1292(b).

**Discussion**

**I. Statute of Limitations**

Missouri law "provides for application of a foreign statute of limitations when [1] the alleged action originated in the foreign jurisdiction and [2] the foreign statute of limitations would bar the action." *Hollingsworth v. United Airlines, Inc.*, No. 4:16 CV 2139 DDN, 2017 WL 564491, at *2 (E.D. Mo. Feb. 13, 2017) (quoting *Harris-Laboy v. Blessing Hosp., Inc.*, 972 S.W.2d 522, 524 (Mo. Ct. App. 1998)).

The Court agrees with Cottrell that the Missouri Supreme Court's 2006 holding in *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 580 (Mo. 2006), is the appropriate touchstone for applying Missouri's borrowing statute. In *Powel*, the court held that "the statute began to run when the damage resulting therefrom was sustained and capable of ascertainment." 197 S.W.3d at 580. The court then clarified the "capable of ascertainment" test, holding that "the statute of limitations begins to run when the '*evidence was such to place a reasonably prudent person on notice of a potentially actionable injury.*'" *Id.* at 582 (quoting *Bus. Men's Assurance Co. of America v. Graham*, 984 S.W.2d 501, 507 (Mo. banc 1999)). Later in *Powel*, however, the court states that damages are sustained and capable of ascertainment "when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Id.* at 584.

In its order denying Cottrell's motion for summary judgment, the Court held that "a reasonably prudent person waking up in the middle of the night with numbness in his arms

3

would not conclude that the numbness was the result of an actionable injury." (Doc. 20 at 6.) The Court explained that there was "no obvious cause for the numbness [in Burdess's arms] that would lead a prudent person to conclude that it was the result of a specific injury, let alone an injury for which another party could be held liable." (*Id.*) Cottrell takes exception to the Court's use of the phrase "an injury for which another party could be held liable." (Doc. 22 at 3-10.)

It appears to the Court that the different interpretations largely arise from a pair of inconsistent passages from *Powel*. The first, applied by the Court in its order denying summary judgment, states:

> Although this Court has not previously clearly articulated a specific, generally applicable test to be used in making this determination, a consistent approach is evident upon careful review of this Court's decisions from the last 40 years: the statute of limitations begins to run when the "*evidence was such to place a reasonably prudent person on notice of a potentially actionable injury.*" At that point, damages would be sustained and capable of ascertainment as an objective matter[.]

*Powel*, 197 S.W.3d at 582 (emphasis added) (quoting *Bus. Men's*, 984 S.W.2d at 507). The second, considered by Cottrell to be determinative,[1] states:

> In sum, under the above cases the capable of ascertainment test is an objective one. The issue is not when the injury occurred, or when plaintiff subjectively learned of the wrongful conduct and that it caused his or her injury, but when a reasonable person would have been *put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages*. At that point, the damages would be sustained and capable of ascertainment as an objective matter.

*Id.* at 584. The passages are not contradictory, but each includes something the other does not: in the first, there is no mention of undertaking to ascertain the extent of damages; in the second, there is no mention of the injury being potentially actionable. Thus, it is important to determine which encompasses the applicable law.

---

[1] The Court notes that Cottrell does cite both passages but interprets the second as determinative.

4

There are a number of reasons the Court considers the first to be a controlling standard. First of all, the context of the passage makes clear that the Missouri Supreme Court is, for the first time, distilling the standard into a single concrete statement of law. Second, that statement of law starts with "the statute of limitations begins to run when . . . ," which this Court finds to be a strong indication of the Missouri Supreme Court's intent to define the applicable standard. *Id.* at 582. Third, the passage describes the statement of law as being consistent with forty years of jurisprudence on this issue.

Meanwhile, the Court finds that there are several reasons to conclude that the second passage is not a standalone legal standard but is instead additional context for understanding the black letter law presented in the first passage. For instance, the second passage indicates that it is summarizing cases to support the proposition that the test is objective rather than subjective; the passage begins with "In sum, under the above cases . . . the test is an objective one." *Id.* at 584. Likewise, the text is a retrospective review of past decisions rather than a prospective description of the legal standard. Ultimately, the second passage merely adds to the first by explaining when evidence of injury is sufficient to satisfy the objective standard; it does not define that standard itself.

At most, the second passage adds an additional requirement that a reasonably prudent person would have "undertaken to ascertain the extent of the damages." *Id.* To that end, Cottrell makes much of Burdess's call to JCT reporting the numbness in his arms. However, as explained below, such action is insufficient to trigger accrual because it ignores the rest of the *Powel* standard.

For those reasons, the Court concludes that it applied the correct legal standard and that therefore its conclusion is sound. The Court reiterates its holding that the evidence before

5

Burdess when he woke up in his Illinois hotel room would not have "lead a prudent person to conclude that [the numbness] was the result of a specific injury, let alone an injury for which another party could be held liable." (Doc. 20 at 6.)

Cottrell argues that the order "omitted the term 'potentially' from 'actionable injury,' which Missouri Courts have found is crucial to application of the standard." (*Id.* at 6.) As an initial matter, the Court disagrees with Cottrell's implication. It is true that the Court did not include "potentially" in its conclusion that "a reasonably prudent person waking up in the middle of the night with numbness in his arms would not conclude that the numbness was the result of an actionable injury." (Doc. 20 at 6.) It is not true that the Court ignored the concept—in the very next sentence, the Court states that a reasonably prudent person could not conclude that he had suffered an injury "for which another party *could* be held liable." (*Id.* (emphasis added).) The Court's use of "could" in "could be held liable" has the same effect as *Powel*'s use of "potentially" in "potentially actionable injury."

Moreover, the Court rejects Cottrell's assertion that the inclusion of "potentially" would substantively change the Court's analysis. Under *Powel*, "the statute of limitations begins to run when the 'evidence was such to place a reasonably prudent person on notice of a potentially actionable injury.'" 197 S.W.3d at 582 (emphasis deleted). This Court found that a reasonably prudent person in Burdess's position would not have been put on notice that an injury had even occurred because a reasonably prudent person would not have sufficient evidence to conclude that the numbness was anything more than a temporary anomaly. Thus, the question of whether there was an "actionable injury" or even a "potentially actionable injury" is not reached.

Still, Cottrell implies that the Court's omission of "potentially" transforms the objective "capable of ascertainment" standard in *Powel* into a subjective test "focus[ing] on when plaintiff

6

'subjectively learned of the wrongful conduct and that it caused his or her injury.'" (Doc. 22 at 5 (quoting *Powel*, 197 S.W.3d at 584-85).) That is incorrect. Again, the Court expressly stated in its order that waking up with temporary numbness is not sufficient evidence to put *a reasonably prudent person* on notice that he had been injured. (Doc. 20 at 6.) It therefore applied *Powel*'s objective standard. Likewise, the Court expressly stated that formal diagnosis—at which point every reasonably prudent person would be on notice of an injury—is "not always the moment (or place) that damages are first ascertainable." (*Id.*) It merely happens that, given the facts of this case, a reasonably prudent person could not be on notice that he had been injured any sooner than Burdess himself was, when he was told as much by his doctor in Missouri.

Cottrell also argues that the Court added an additional element to the *Powel* standard, "requiring that a reasonable person be 'on notice that another party could be liable' for accrual to occur." (Doc. 22 at 5 (quoting Doc. 20 at 6).) To the contrary, the Court believes that Cottrell omits a word from the *Powel* standard, namely, "actionable." Black's Law Dictionary defines that word as "Furnishing the legal ground for a lawsuit or other legal action." ACTIONABLE, Black's Law Dictionary (10th ed. 2014). There can be no legal ground for a lawsuit or other legal action absent some potentially liable adverse party. The Court therefore concludes that Cottrell's interpretation is not supported by the text of *Powell*.

In short, under the Eighth Circuit's standard, the statute of limitations begins to run when a reasonably prudent person would have been put on notice of two things: that he has suffered an injury and that the injury is "potentially actionable." Although Cottrell is correct that a plaintiff need not know the specific extent or nature of the injury or its cause, the plain meaning of *Powell*'s standard demands that a reasonably prudent person would be aware of *some* injury and that *some* person could be sued for causing it. Further, as noted above, even if Cottrell's

7

favored *Powel* passage adds the third element of undertaking to ascertain the extent of the injury, the claim does not accrue until all three are met. Burdess's call to JCT alone is not enough.

The Court reiterates its conclusion that a reasonably prudent person waking with numbness in his arm would be put on notice that the numbness was the result of a potentially actionable injury. Accordingly, Burdess's claim accrued when his Missouri doctor informed him that the numbness was not a temporary anomaly but was in fact bilateral shoulder impingement syndrome caused by repetitive motion. Only then was there sufficient available information to put a reasonably prudent person on notice that the numbness was caused by some injury and that some third part might be liable for that injury.

**Conclusion**

Because Plaintiffs' cause of action against Cottrell originated in Missouri, that state's five-year statute of limitations governs and Plaintiffs' May 6, 2017, complaint was therefore timely filed. Accordingly, the Court concludes that its ruling was not the result of "manifest errors of law or fact." Fed. R. Civ. P. 59.

## II. Interlocutory Appeal

The Court does not believe that this issue "involves a controlling question of law as to which there is substantial ground for difference of opinion" or "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Therefore, it will not certify the question to the Circuit Court for immediate review.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Cottrell, Inc.'s ("Cottrell") Combined Motion to Reconsider or Certify Immediate Interlocutory Appeal (Doc. 22), is **DENIED.**

Dated this 9th day of January, 2019.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE