**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GREGORY L. BURDESS and | ) | |
| LISA BURDESS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-01515-JAR |
| | ) | |
| COTTRELL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Cottrell, Inc.'s ("Cottrell") Motion for Summary Judgment on Missouri's Borrowing Statute and Statute of Limitations. (Doc. 66). The motion is fully briefed and ready for disposition. For the reasons discussed below, the motion will be granted and judgment entered in favor of Cottrell.

I.      **BACKGROUND**

Since 2001, Plaintiff Gregory Burdess ("Burdess") has been employed as a car hauler by Jack Cooper Transport Company ("JCT"), a registered transporter of motor vehicles. (Doc. 1 at ¶ 1; Doc. 63 at ¶ 20). Put simply, Burdess loads cars on a trailer and hauls them to various points across the country while working out of a Wentzville, Missouri terminal. On or about April 5, 2013, while on a job, Burdess woke up in a motel room in Illinois with his arms completely numb.[1] Burdess was subsequently diagnosed with bilateral shoulder impingement syndrome, a condition

---

[1] There is some confusion as to the precise date of this incident. At his deposition, Burdess initially confirmed the event as occurring on April 26, 2013. (Doc. 67-1 at 66). But it has become clear through the records that this event actually occurred on or about April 5, 2013, and Burdess was diagnosed roughly three weeks later on or about April 26, 2013. (*Id.* at 133; Doc. 99 at ¶ 3). This distinction is not material, but the Court assumes in light of the evidence that the motel incident occurred on April 5, 2013.

1

sometimes caused by specific and repetitive trauma. Plaintiffs' complaint, filed in this Court on May 16, 2017, alleges that Cottrell, who designs and manufactures the trailers, is responsible for Burdess' injuries pursuant to theories of strict liability (*i.e.*, defective design) (Count I); negligence (Count II); and breach of implied warranty (Count III). Plaintiffs also claim loss of consortium (Count IV) and seek punitive damages (Count V). Cottrell argues that Plaintiffs' claims are barred under Illinois' statute of limitations pursuant to Missouri's borrowing statute. MO. REV. STAT. § 516.190.

## II.     LEGAL STANDARD

Under Fed. R. Civ. P. 56, a movant is entitled to summary judgment if they can "show[] that there is no genuine dispute as to any material fact" and they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, the evidence must be viewed in the light most favorable to the nonmoving party. *Osborn v. E.F. Hutton & Co.*, 853 F.2d 616, 619 (8th Cir. 1988). The nonmovant, however, "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587-87 (1986)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III.    DISCUSSION

### A.  Missouri's Borrowing Statute

When sitting in diversity and assessing statutes of limitations, federal courts apply the law of the forum state. *Nettles v. Am. Tel. and Tel. Co.*, 55 F.3d 1358, 1362 (8th Cir. 1995) (citation omitted). In this forum, statutes of limitations are procedural and accordingly governed by

2

Missouri law. *Id.* (citing *Renfroe v. Eli Lilly & Co.*, 686 F.2d 642, 646 (8th Cir. 1982)). Pursuant to MO. REV. STAT. § 516.120(4), personal injury claims like Plaintiffs' are subject to a five-year statute of limitations.[2] But Missouri has adopted a borrowing statute which provides:

> Whenever a cause of action has been fully barred by the laws of the state, territory or country *in which it originated*, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state. MO. REV. STAT. § 516.190 (emphasis added).

The purpose of the borrowing statute is "primarily to prevent a plaintiff from forum shopping for a statute of limitations" and "gaining more time to bring an action merely by suing in a forum other than where the cause of action accrued." *Nettles*, 55 F.3d at 1362 (quoting *Patch v. Playboy Enters., Inc.*, 652 F.3d 754, 756 (8th Cir. 1981) (per curiam)).

Cottrell argues that Plaintiffs' claims originated in Illinois on or about April 5, 2013 when Burdess woke up in a motel room with numb arms. If that is the case, Illinois' two-year statute of limitations bars Plaintiffs' claims pursuant to the borrowing statute because the complaint was not filed until May 16, 2017. *See* 735 ILL. COMP. STAT. § 5/13-202; *Hollingsworth v. United Airlines, Inc.*, No. 4:16-CV-2139 DDN, 2017 WL 564491, at *3 (E.D. Mo. Feb. 13, 2017) (finding claims time-barred under Illinois statute of limitations pursuant to Missouri borrowing statute). Plaintiffs respond that their claims did not accrue until Burdess was formally diagnosed with shoulder impingement by a physician in Missouri, three weeks after the motel room incident, and the complaint was timely filed under Missouri's five-year statute of limitations. Cottrell's motion for summary judgment accordingly turns on one question: when and where did Plaintiffs' claims originate?[3]

---

[2] This Court has previously determined, and continues to find, that this action is governed by Missouri law. (*See* Docs. 14, 20).

[3] In a separate motion for summary judgment, Cottrell argues that Plaintiffs' breach of implied warranty claim is, in any event, time-barred under Missouri's four-year statute of limitations for contract claims. (Doc. 62). *See* MO. REV.

The Supreme Court of Missouri has interpreted the term "originated" to mean "accrued." *Thompson by Thompson v. Crawford*, 833 S.W.2d 868, 871 (Mo. banc 1992). Under Missouri law, a cause of action does not accrue "when the wrong is done . . . but when the damage resulting therefrom is *sustained and is capable of ascertainment*." Mo. Rev. Stat. § 516.100 (emphasis added). In *Powel v. Chaminade Coll. Preparatory, Inc.*, the Missouri Supreme Court substantially clarified what it means for damages to be sustained and capable of ascertainment. 197 S.W.3d 576 (Mo. banc 2006). The court considered the case of an adult plaintiff who alleged that he was sexually assaulted in high school decades prior but had repressed his memory of the abuse. After extensive consideration of applicable precedent, the court concluded that the statute of limitations begins to run "*when the evidence was such to place a reasonably prudent person on notice of a potentially actionable injury*." *Id.* at 582 (internal quotation and citation omitted) (emphasis in original). The court specifically distinguished this objective, inquiry notice standard from the subjective question of when the particular plaintiff perceived an actionable injury. *Id.* at 584.

Later in the *Powel* opinion, the Missouri Supreme Court offered a slightly different formulation of the test, describing accrual as occurring "when a reasonable person would have been put on notice that an injury and substantial damage may have occurred and would have undertaken to ascertain the extent of the damages." *Id.* at 584. In *State ex rel. Halsey v. Phillips*,

---

Stat. § 400-2.725. Plaintiffs respond that their breach of implied warranty claim is of tort nature, meaning Missouri's five-year statute of limitations for personal injury claims should apply. *See* Mo. Rev. Stat. § 516.120. Cottrell suggests that this "appears to be an unsettled issue in Missouri." (Doc. 109 at 15). Because this Court finds that Plaintiffs' claims accrued in Illinois, it need not determine whether Plaintiffs' breach of implied warranty claim is of tort or contract nature. In either case, it would be barred under the applicable Illinois statute of limitations. *See* 735 Ill. Comp. Stat. § 5/13-202 (two-year statute of limitations for personal injury actions); 810 Ill. Comp. Stat. § 5/2-725 (four-year statute of limitations for breach of contract actions).

Plaintiff Lisa Burdess' loss of consortium claim, meanwhile, is entirely derivative of Burdess' claims and accordingly fails because Burdess' claims are time-barred. *See Ridder v. Hibsch*, 94 S.w.3d 470, 473 (Mo. Ct. App. 2003) ("As Plaintiff's husband's loss of consortium claim is only derivative of Plaintiff's claims, his claim automatically would have been rendered invalid if all of Plaintiff's claims were time-barred."); *see also H.R.B. v. Rigali*, 18 S.W.3d 440, 445-46 (Mo. Ct. App. 2000).

4

decided in 2019, the Missouri Supreme Court only quoted this latter language when citing *Powel*. 576 S.W.3d 177, 180 (Mo. banc 2019). This Court has extensively discussed the differences between these two standards, ultimately concluding that the first standard is controlling. (Docs. 29, 37). Courts continue to cite both the first and second formulation, sometimes together, as the test for accrual under Missouri law. *Compare Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 765 (8th Cir. 2020) (only citing first test); *id.* at 180 (only citing second test); *State ex rel. Marianist Province of United States v. Ross*, 258 S.W.3d 809, 811 (Mo. banc 2008) (describing first test as synthesis of second test); *Brantl v. Curators of Univ. of Missouri*, 616 S.W.3d 494, 498 (Mo. Ct. App. 2020) (citing both tests). The slight differences between these formulations are not material to this case because Plaintiffs' claims are time-barred under either test.

### B.   New Evidence Since Cottrell's Previous Motion

This precise issue has already been presented in this case. On July 16, 2018, this Court denied Cottrell's motion for summary judgment (which had been converted from a motion to dismiss) on application of Missouri's borrowing statute. (Doc. 20). This Court also proceeded to deny Cottrell's Motion to Reconsider or Certify Immediate Interlocutory Appeal (Doc. 29) and second Motion to Reconsider. (Doc. 37). After extensive analysis, this Court held that "a reasonably prudent person waking up in the middle of the night with numbness in his arms would not conclude that the numbness was the result of an actionable injury." (Doc. 20 at 6). In reaching this determination, this Court relied heavily on the fact that Burdess had "not experienced any slip, fall, or other trauma that might explain the sensation" and testified that he "*had no difficulties with his hands, wrists, arms, or shoulders before that night*." (*Id.*) (emphasis added). This Court affirmed the importance of this latter language by quoting it in full when denying the second motion to reconsider. (Doc. 37 at 5).

The facts before this Court now, however, are considerably different.[4] The undisputed facts demonstrate that Burdess had various job-related difficulties with his hands, wrists, arms, and shoulders before waking up in an Illinois motel room with numb arms. Burdess initially testified at his deposition that prior to 2013 he never had any problems with his hands, arms, elbows, or shoulders. (Doc. 67-1 at 96-98). But after a break, Burdess agreed with Cottrell's counsel that "some of the answers . . . might have been incomplete regarding previous problems [he] may have had." (*Id.* at 174). In many of these instances, Burdess stated that he did not recall the previous injury, though he also did not deny the validity of his medical records. These previous injuries include the following[5]:

- 2002 Injury: In 2002, Burdess was treated at an Occupational Medicine Clinic for "right arm and shoulder pain after apparently reaching down and picking up a tie-down bar. As he started to pull on it, he felt a 'sharp pain' radiate down through his arm" and had "persistent soreness ever since." (Doc. 102-6; *see also* Doc. 102-5 at 3). He was assessed as having right shoulder and upper arm strain. After visiting the doctor a week later, he returned to full duty and no further care was necessary. When asked about this visit at his deposition, Burdess stated he remembered visiting the doctor but did not remember discussing his arms. (Doc. 67-1 at 176). Burdess agreed there was no reason the doctor would have written the information down if the visit had not occurred. (*Id.* at 177; *see also* Doc. 63 at ¶ 42).

- 2007 Injury: Dr. David Volarich performed an Independent Medical Evaluation of Burdess on April 2, 2015. Dr. Volarich's report states that Burdess "noted pain in his right shoulder in 2007, but cannot recall undergoing any treatment." (Doc. 102-5 at 3). At his deposition, Burdess stated he had no recollection of shoulder pain in 2007. (Doc. 67-1 at 178).

- 2008 Injury: Burdess reported that in 2008 he was tying a cord together and reached up and developed a sudden pain in his left hand and elbow. (Doc. 102-8). He was diagnosed

---

[4] District courts have wide discretion to permit or restrict successive motions for summary judgment. *See McCabe v. Macaulay*, 545 F. Supp. 2d 857, 865 (N.D. Iowa 2008) (citations omitted). Cottrell's initial motion to dismiss on statute of limitations grounds was properly filed early in the case given its potentially dispositive nature. This Court, in its discretion, finds that Cottrell's filing of a second summary judgment motion on statute of limitations grounds is appropriate considering the relevant factual developments during discovery.

[5] The Court notes that Burdess suffered numerous other injuries in the course of his manually intensive employment, albeit not involving his upper extremities. The record reflects, for example, that Burdess experienced serious injuries to his knees as a result of his work. (Doc. 102-5 at 6-7).

with a left forearm strain and referred to an orthopedist, but there was no follow up treatment. The medical records consistently indicate that the chief complaint concerned the "entire left arm." (*Id.* at 3, 5, 7). At his deposition, Burdess stated he had no recollection of this injury but agreed that "apparently [he] did say it. It's in the records." (Doc. 67-1 at 178-79).[6]

- 2012 Injury: Burdess visited Dr. Grus in 2012 for pain in his finger joint. He stated that the problem was aggravated by grasping, though numbness is listed as a pertinent negative. (Doc. 102-7). Burdess remembered this treatment but stated he had no trouble grasping. (Doc. 67-1 at 180-81).

- November 2013 Visit with Dr. Emanuel: Burdess visited Dr. Emanuel in November 2013, months after he had filed a workers' compensation claim and his injuries in this case had unquestionably become capable of ascertainment. Dr. Emanuel's notes clearly reflect that Burdess "indicate[d] the gradual onset of shoulder pain over the last 5 to 6 years." (Doc. 81-2 at 18). Burdess also stated that "his left shoulder feels much better since he is not working." (*Id.*). The following exchange between Cottrell's counsel and Dr. Emanuel occurred at the deposition:

  *Cottrell's Counsel*: With regard to the injuries themselves, did Mr. Burdess tell you that the pain he had that was so bad that he couldn't go do his work started on April 5th, 2013?

  *Dr. Emanuel*: It culminated up to that point.

  *Cottrell's Counsel*: And he actually indicated that he had been having shoulder pain over the last five to six years before that; is that correct?

  *Dr. Emanuel*: Yes, he did say that. Gradual onset of the shoulder pain over the last five to six years, yes. (Doc. 81-1 at 13).

Given the materially different facts at hand, this Court will again consider whether a reasonably prudent person in Burdess' shoes would have been on notice of a potentially actionable injury.

C.  Analysis

The objective test for determining when an injury is "capable of ascertainment" is from the standpoint of a reasonable person in the plaintiff's situation. *Levitt v. Merck & Co., Inc.*, 914 F.3d

---

[6] Plaintiffs appear to dispute whether this injury occurred. Cottrell's Statement of Uncontroverted Material Facts ("SUMF") clearly provide, however, that Burdess experienced left arm pain (at least from the elbow down) in connection with his job activities. (Doc. 63 at ¶¶ 43-44). Plaintiffs admit these elements of the SUMF. (Doc. 99 at ¶ 43-44). *See* E.D. Mo. L.R. 4.01(e).

7

1169, 1172 (8th Cir. 2019) (citing *Powel*, 197 S.W.3d at 582). Because this is an objective standard, the issue can be decided by the court as a matter of law but "when contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question of fact for the jury to decide." *Powel*, 197 S.W.3d at 585 (internal quotations omitted). Since *Powel*, Missouri courts have generally recognized that the issue is "ordinarily decided as a matter of law." *Thomas v. Grant Thornton LLP*, 478 S.W.3d 440, 444 (Mo. Ct. App. 2015) (quoting *Ferrellgas, Inc. v. Edward A. Smith, P.C.*, 190 S.W.3d 615, 620 (Mo. Ct. App. 2005)); *see also Wilson Road Dev. Corp. v. Fronabarger Concreters, Inc.*, 971 F. Supp. 2d 896, 914 (E.D. Mo. 2013); *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 111 (Mo. Ct. App. 2006) ("Whether a statute of limitations has run to bar a claim is normally a question of law.").

Burdess hauls cars as an employee of JCT. Based on the briefing, it appears that this entails (among other things) pulling a tie-down bar connected to ratchet straps with enough force to fully secure the cars to the trailer. The job is manually intensive, and when using Cottrell trailers, Burdess would use "[w]hatever strength it took" to tighten the car to the trailer. (Doc. 67-1 at 36). On a scale from zero to ten, with ten requiring all his strength, Burdess described this activity as a "seven or eight" in terms of effort. (*Id.*). This typically demanded about 100 pounds of force. (Doc. 102-5 at 2). On April 5, 2013, Burdess woke up at 3:00 A.M. in an Illinois motel room and felt "just like a wet noodle." (*Id.* at 66). He had no feeling in either arm for three hours, and spent a meaningful portion of that time on the floor unable to get up. (*Id.* at 72). Finally, he was able to call JCT and inform them of the situation. Burdess told JCT that "there's no way [he] could" pick up another haul because he had substantial pain in his shoulders. (*Id.* at 73-74).

As discussed above, Burdess had multiple work-related injuries involving his upper extremities prior to this incident. In 2002, he experienced right arm and shoulder pain after pulling on the same tie-down bar at issue in this litigation and was assessed as having "[r]ight shoulder and upper arm strain." (Doc. 102-6 at 1). In 2008, he was apparently tying a cord together, reached up and developed a sudden pain in his elbow and had a chief complaint concerning his "entire left arm." (Doc. 102-5 at 3; Doc. 102-8 at 3, 5, 7, 8). Most importantly, in November 2013, Burdess indicated to a physician that he had gradual onset of shoulder pain for five to six years, but his shoulders felt better since he ceased working. (Doc. 81-2 at 18).[7] At his deposition, Burdess repeatedly claimed that he could not recall the injuries or conversations with the physicians. Burdess does not deny that such conversations occurred, however, and Plaintiffs have produced no evidence to create a genuine issue of material fact as to this well-documented medical history. The Court also notes that under the objective standard established by *Powel*, it is entirely irrelevant whether Burdess actually remembers those injuries because a reasonable person would recall their own medical history.[8]

---

[7] Plaintiffs argue that "no other medical records support this proposition as to 'gradual onset' which creates a genuine issue of material fact." (Doc. 102 at 4). This Court disagrees with Plaintiffs' assessment. Dr. Emanuel has clear medical records indicating that Burdess complained of gradual onset shoulder pain, and Dr. Emanuel confirmed at his deposition that Burdess made such statements. When directly asked whether he had five to six years of gradual onset shoulder pain, Burdess responded: "I didn't think so. But there's medical records there that says different." (Doc. 67-1 at 182). Burdess followed up that he "had so many things happen to me, that I can't remember everything." (*Id.*). Earlier in the deposition. Burdess had confirmed that he provided Dr. Emanuel "complete and accurate answers" and was "careful to explain to [Dr. Emanuel when his] pain and problems started." (*Id.* at 142). These statements do not create a genuine issue of material fact as Plaintiffs have not come forward with specific, contrary evidence. Mere metaphysical doubt is insufficient.

[8] The parties devote substantial discussion to the question of when Burdess himself recognized that he had an actionable claim. As discussed, this is irrelevant under Missouri law pursuant to *Powel*. For the sake of thoroughness, the Court notes that various undisputed facts suggest Burdess was aware he had an actionable claim. First, Burdess called JCT to inform them that he could not pick up another haul due to his shoulder pain. Second, on or about April 26, 2013, Dr. Larkin asked Burdess if he knew the cause of his shoulder injury. As explained by Burdess, he responded that "the only thing I can think of is pulling down on the bar." (Doc. 67-1 at 85). Burdess appears to have connected his work to his injury before any physician made such a diagnosis.

9

Finally, the Court recognizes that the primary purpose of the borrowing statute is to prevent forum shopping. *Nettles*, 55 F.3d at 1362. In denying Cottrell's earlier motion for summary judgment, this Court "note[d] with some degree of suspicion that, only weeks before filing this suit in the Eastern District of Missouri, Plaintiffs filed suit in Illinois state court against Cottrell and others, alleging that Burdess was injured due to a design defect in a Cottrell rig." (Doc. 20 at 5) (citations omitted). This Court retains its suspicion while acknowledging that Plaintiffs' Illinois suit involves a different, traumatic injury, "offer[ing] a reasonable basis for filing separate suits." (*Id.*).

With these cumulative, undisputed facts in mind, this Court holds as a matter of law that Burdess' injuries originated in Illinois. A reasonable person in Burdess' situation, given his medical history as now developed, would have been on notice of a potentially actionable injury upon experiencing three hours of arm numbness (including hours stuck on the floor) followed by substantial shoulder soreness. Further discovery in this case has revealed that Burdess' job required him to exert substantial overhead force, that he had already suffered multiple injuries to his upper extremities in the course of his work, and that his experience in the Illinois motel room was indicative of substantial damage. A reasonably prudent person with Burdess' injury history and employment would have connected his numb arms and shoulder pain to his job and identified a potentially actionable injury.

Plaintiffs cite outdated precedent to suggest that physical ailments are not sustained and capable of ascertainment until they are diagnosed. (Doc. 102 at 5). *See, e.g.*, *Buttice v. GD Searle & Co.*, 938 F. Supp. 561, 566-67 (E.D. Mo. 1996). These decisions, however, precede the Missouri Supreme Court's critical decision in *Powel* establishing the objective test. As courts applying Missouri law have explained more recently, "diagnoses are not always dispositive. Damages may

10

be sustained and capable of ascertainment before a plaintiff learns of his injury or sees a physician." *Savage v. 3M Co.*, No. 4:08-CV-1162 CAS, 2010 WL 4000620, at \*5 (E.D. Mo. Oct. 12, 2010). In its previous decision in this case, this Court noted that "formal diagnosis is not always the moment (or place) that damages are first ascertainable." (Doc. 20 at 6). In light of his medical history and employment, Burdess' injuries were sustained and capable of ascertainment before he was formally diagnosed.

Ultimately, Burdess' injuries accrued "*when the evidence was such to place a reasonably prudent person on notice of a potentially actionable injury.*" *Powel*, 197 S.W.3d at 582 (emphasis in original). Put another way, a claim accrues "when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *State ex rel. Marianist Province of the United States v. Ross*, 258 S.W.3d 809, 811 (Mo. banc 2008) (quoting *id.* at 584). A reasonably prudent person in Burdess' shoes would have been on notice of a potentially actionable injury and undertaken to ascertain the extent of the injury upon waking up in an Illinois motel room with completely numb arms, being stuck on the floor for hours unable to get up, and then having substantial shoulder soreness. This may have been the result of repetitive trauma over the years as Burdess hauled cars across the country, but those injuries culminated and became capable of ascertainment that morning in Illinois.[9]

---

[9] This Court recognizes that it is slightly odd to apply Illinois' statute of limitations simply because that is where Burdess woke up with numb arms after allegedly suffering an injury caused by repetitive trauma over the course of years while traveling across the country. But "[w]ithout waxing too philosophical, every injury could *hypothetically* happen elsewhere, if the facts were changed." *Stanley v. Cottrell, Inc.*, No. 4:10-CV-1505 HEA, 2013 WL 466232, at \*4 (E.D. Mo. Feb. 7, 2013).

IV.     **CONCLUSION**

Cottrell's motion for summary judgment presents a straightforward question: did Burdess' injuries originate in an Illinois motel room or Missouri doctor's office? If the former, then Plaintiffs' claims are barred under Illinois' two-year statute of limitations. If the latter, then Plaintiffs' complaint was timely filed under Missouri's five-year statute of limitations. Applying Missouri law, Plaintiffs' claims originated when they were sustained and capable of ascertainment. The Missouri Supreme Court has interpreted this language to mean that "the evidence was such to put a reasonably prudent person on notice of a potentially actionable injury." *Powel*, 197 S.W.3d at 582 (emphasis omitted).

After extensive consideration, this Court finds as a matter of law that a reasonably prudent person in Burdess' shoes would be on notice of a potentially actionable injury upon experiencing three hours of complete arm numbness, including hours on the floor unable to get up, and subsequent shoulder soreness. Three key, undisputed facts compel this conclusion. First, Burdess performed a manually intensive job frequently requiring him to exert substantial overhead force. Second, and more importantly, Burdess had already suffered multiple work-related injuries to his upper extremities, including from pulling the tie-down bar at issue in this litigation. Finally, Burdess' experience in the Illinois motel room was clearly indicative of substantial injury, the extent of which a reasonable person would promptly attempt to ascertain (as Burdess did). Burdess may not have known the precise nature of his legal claim or medical diagnosis, but such particular knowledge is not necessary to trigger the statute of limitations. A reasonably prudent person with a manually intensive job and history of work-related injuries is on notice of a potentially actionable injury when they knowingly suffer a substantial medical injury likely connected to their work.

This Court recognizes that substantial time and resources have been invested in this litigation. It is unfortunate that most of these resources were expended after this Court denied Cottrell's motion to dismiss (Doc. 14), converted motion for summary judgment (Doc. 20), and motions to reconsider (Docs. 29, 37), only for the Court to now grant summary judgment in favor of Cottrell on the same issue. But Burdess' more recent deposition and extensive medical records, which were not before the Court on those prior motions, revealed material facts fundamentally altering this Court's analysis of when and where Plaintiffs' claims accrued. With those facts before it, this Court finds that Plaintiffs' claims are time-barred under Illinois law pursuant to Missouri's borrowing statute.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Cottrell, Inc.'s Motion for Summary Judgment on Missouri's Borrowing Statute and Statute of Limitations (Doc. 66) is **GRANTED**. A separate Order of Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that all other pending motions in this case (Docs. 61, 62, 64, 68, 70-74, 114) are **DENIED as moot**.

Dated this 8th day of April, 2021.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

13