**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| GREGORY L. BURDESS and LISA BURDESS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )  Case No. 4:17-CV-01515-JAR |
| COTTRELL, INC., | ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's motions to exclude certain testimony of Plaintiff's treating and examining physicians in this product liability case. For the reasons discussed below, the motions will be denied.

**I.    BACKGROUND**

Plaintiff Gregory Burdess worked as a car hauler for 25 years, loading cars on trailers and transporting them throughout the country. Defendant Cottrell designs and manufactures the trailer at issue in this case. To secure cars on a trailer, Burdess operated a chain and ratchet system on the trailer requiring him to reach overhead and pull down a tie bar using significant force. Burdess performed this forceful overhead pull-down motion repetitively throughout his employment.

On April 5, 2013, at age 54, while traveling in Illinois on a job, Burdess woke up unable to move his arms due to numbness. He sought medical treatment and was diagnosed with bilateral rotator cuff impingement and bilateral carpal and cubital tunnel syndrome. Shortly thereafter, he filed a Missouri state workers' compensation claim describing the circumstances of his injuries as follows:

1

> Repetitive trauma to both shoulders and upper extremities resulting from duties as a car hauler, including but not limited to tightening and loosening chains using a ratchet bar winch mechanism, compressing the height of vehicles, climbing ladders, placing ramps, and all the other duties of a car hauler working for this employer.

(Doc. 135-1).

After conservative treatment proved ineffectual, Burdess underwent multiple surgeries to both upper extremities. Burdess's treating physicians acknowledged some degenerative changes but opined that his work was the prevailing factor in his injuries, with the overhead motion particularly affecting his shoulders. The workers' compensation case was resolved in June 2017 through a settlement with Burdess's employer. In May 2017, Burdess and his wife filed the present personal injury lawsuit alleging that Cottrell's chain and ratchet system was the cause of his injuries.  Plaintiffs assert claims on theories of strict liability (*i.e.*, defective design) (Count I), negligence (Count II), breach of implied warranty (Count III), and loss of consortium (Count IV). They also seek punitive damages for Cottrell's alleged disregard for employee safety in pursuit of profits (Count V).  As relevant here, Burdess was treated or examined by the three orthopedic surgeons whose testimony Cottrell seeks to exclude.

**Dr. Larkin**

Dr. Brandon Larkin saw Burdess on April 26, 2013.  Larkin diagnosed bilateral rotator cuff impingement/tendinosis, administered a cortisone injection in the right shoulder, and advised Burdess to pursue physical therapy. (Doc. 140-4 at 15).  The following month, an MRI revealed bilateral degenerative changes, a partial tear in a right rotator cuff tendon, and a tear in the left shoulder joint.  (*Id*. at 8-9, 16; Doc. 140-5 at 4).  Burdess declined further injections.  Larkin believed Burdess's work to be the prevailing factor in his initial pain but degenerative changes as the prevailing factor in his ongoing pain.  (Doc. 140-4 at 17; Doc. 140-5 at 9).

2

In his deposition in December 2020, with more information about Burdess's occupation, Larkin clarified that Burdess's job duties, particularly pulling down on the tie-down bar multiple times per day using over 100 pounds of force, would be a contributing factor in his shoulder impingement. (Doc. 140-5 at 5, 11). He explained that degenerative changes can be related to age, genetics, and occupation, and people who do overhead work and use their arms a lot tend to experience more hypertrophic change more severely and more quickly than people with sedentary jobs. (*Id*. at 7-8). Larkin said that, in addition to degenerative changes, repetitive activity and overuse can be contributing causes in rotator cuff tears and inflammation. (*Id*. at 8). He confirmed that a forceful overhead pull-down motion could further aggravate degenerative changes. (*Id*. at 10-11). He did not opine that Burdess's degenerative changes were caused by his job. (*Id*. at 12).

**Dr. Rotman**

Burdess sought treatment with Dr. Mitchell Rotman in July 2013. Based on Burdess's self-report that 90% of his work was overhead, Rotman opined that Burdess's work was the prevailing factor in his impingement condition. (Doc. 141-4 at 2, 9). Rotman ordered a nerve study that revealed bilateral carpal and cubital tunnel syndrome. (*Id*. at 10). In September 2013, he performed a shoulder arthroscopy, ulnar nerve transposition, and endoscopic carpal tunnel release, all on the right side. (*Id*. at 12-13). He also noted significant swelling around the elbow and a tear in the biceps that required a tenotomy (i.e., partial removal). (*Id*.; Doc. 141-6 at 7, 9). In January 2014, Rotman performed ulnar nerve transposition and endoscopic carpel tunnel release on the left side. (Doc. 141-4 at 20-21). He opined that Burdess's work was the prevailing factor in his cubital and carpal tunnel conditions. (*Id*. at 19).

Rotman conducted an IME in February 2016, by which time Burdess had been back to work for seven months. (Doc. 141-4 at 24-30). At that time, Burdess complained of left shoulder

3

pain and tingling in both elbows and hands. Rotman cited a report by a Dr. Volarich, dated April 2015, noting that Burdess's symptoms subsided when he was off work and increased when he returned to work. (*Id*. at 27). Rotman suspected that Burdess's left shoulder had deteriorated since 2013 and recommended arthroscopy and debridement, as well as nerve studies to evaluate his elbows and hands. (*Id*. at 29). In May 2016, Rotman provided an addendum to his IME describing Burdess's job tasks, among them 20-36 tie-downs per load, and opining that Burdess's overhead work was the prevailing factor aggravating his chronic conditions. (*Id*. at 33-38).

In July 2016, Rotman performed a shoulder arthroscopy, debridement, and biceps tenotomy on the left side. (*Id*. at 39). He also noted joint arthritis and a 50% loss of cartilage. (*Id*. at 43; Doc. 141-6 at 11). In September 2016, Rotman performed a trigger release on Burdess's right ring finger. Burdess was cleared to return to work the following month. (Doc. 141-4 at 50).

Rotman was deposed for the present case in November 2020. He said he was very familiar with Burdess's job duties because he has watched a lot of videos of car haulers chaining cars onto trailers. (Doc. 141-6 at p. 4-5). In fact, Rotman previously served as the company doctor for a car hauling company. (*Id*.). Rotman opined that all of Burdess's problems except arthritis were caused by his use of the chain and ratchet system on his trailer. (*Id*. at 8, 10-11). When challenged about whether Burdess actually performed overhead work 90% of his time, Rotman clarified his understanding that this excluded driving and involved only the chaining aspects of the job. (*Id*. at 16). Rotman acknowledged that he was unfamiliar with different manufacturers and systems but assumed they were similar with respect to overhead work. (*Id*. at 17). He did not know what level of force would be enough to cause Burdess's injuries. (*Id*. at 18).

4

**Dr. Emanuel**

In November 2013, Dr. James Emanuel conducted an independent medical examination (IME) in connection with Burdess's work comp claim. He noted that Burdess's job duties included pulling down a lever to secure cars and carrying large chains. (Doc. 139-5 at 2). Burdess reported a gradual onset of shoulder pain over the prior five to six years and no outside hobbies or injuries outside the workplace. Emanuel opined that Burdess's job duties, particularly the overhead activities, aggravated his degenerative changes and were the prevailing factor in his shoulder injuries. (*Id*. at 4). Emanuel performed another IME in February 2014 and reiterated that opinion. (*Id*. at 8-9). Emanuel became one of Burdess's treating physicians in March 2014, at which time his plan consisted of physical therapy for the left elbow and wrist. (*Id*. at 11-12). In May 2014, Burdess complained of a left trigger finger after returning to work. (*Id*. at 17). Emanuel did not treat Burdess after this date.

In his deposition for this case in January 2021, Emanuel explained that carpel tunnel syndrome is related to power gripping, lifting, pushing, and pulling. (Doc. 139-1 at 3). He confirmed that Burdess's shoulder condition was related to overhead work, including pulling down the tie-down bar. (*Id*. at 6, 8). He stated that trigger finger is typically seen in patients who do power gripping and repetitive work with the hands and wrists. (*Id*. at 9). Emanuel did not receive a written description of Burdess's job activities but had previously seen a video of car haulers performing their work. His impression from Burdess was that operating the tie-down bar particularly bothered his shoulders. (*Id*. at 14). Emanuel added that the gripping and forceful flexing and extending of the elbow required in the maneuver could also contribute to carpal and cubital tunnel syndrome. (*Id*.). He conceded that he had no specific knowledge about Cottrell's or any other manufacturer's ratchet system and clarified that one mechanism over another would not

5

make a difference; rather, it is the actual force and repetitive nature of the task that causes the injury. (*Id*. at 18).

Cottrell moves to exclude all three doctors' testimony as (1) insufficiently disclosed under Rule 26, Fed. R. Civ. P., and (2) inadmissible under Rule 702, Fed. R. Evid.

## II.     RULE 26 DISCLOSURE

Under Rule 26, non-retained experts, including treating physicians, are subject to less stringent disclosure requirements than retained experts. *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 644 (8th Cir. 2022). Parties must disclose the identity of non-retained experts who may testify at trial, the subject matter on which the witness is expected to present expert opinion testimony, and a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C). A non-retained expert such as a treating physician may testify as a fact witness and may also provide expert testimony under Rule 702, Fed. R. Evid. Fed. R. Civ. P. 26 advisory committee's notes to 2010 Amendments, Subdivision (a)(2)(C). If a treating physician will testify about matters outside the realm of treatment, such as causation of a condition, it must be disclosed. *Gruttemeyer*, 31 F.4th at 644. However, courts should not require undue detail, as these witnesses have not been specifically retained and may not be as responsive to counsel as those who have. Fed. R. Civ. P. 26 advisory committee's notes to 2010 Amendments, Subdivision (a)(2)(B).

In his Rule 26(a) disclosures, Burdess identified Drs. Larkin, Rotman, and Emanuel as unretained medical experts who were "involved in the treatment and/or examination of plaintiff" and were expected to testify that "the injury in question was a substantial factor in causing Plaintiff's medical condition and inability to work, the condition is permanent and prevented work." (Doc. 149-4). Cottrell essentially contends that the doctors' opinions surpass this scope.

6

Cottrell does not dispute the disclosure or admissibility of facts and opinions contained in the doctors' medical records but argues that the doctors should not be permitted to testify about any causal connection between the ratchet system and Burdess's repetitive trauma injuries.

The Court finds this argument unpersuasive.  Burdess's disclosure, while perhaps inartful, is sufficient to signal that his doctors would opine about the cause of his conditions.  The doctors' medical records and earlier opinions in the work comp case, to which Cottrell does not object, attribute Burdess's conditions to his job duties.  Their later opinions here simply explore those duties and conditions in greater detail as relevant to this case.

Even were the Court to find Burdess's disclosure insufficiently specific, total exclusion of the doctors' opinions would not be warranted as a remedy.  The exclusion of evidence is a harsh penalty and should be used sparingly.  *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). Sanctions may be appropriate when a party fails to provide information required by Rule 26(a) unless the failure is "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).  Here, while Burdess's disclosure could have been clearer, he did not entirely fail to disclose the nature of the doctors' opinions, and the Court finds that any arguable deficiency was harmless.  Cottrell does not and could not claim surprise given the nature and history of this case and the content of Cottrell's own disclosures, in which Cottrell reserved the right to call any of Burdess's doctors "to testify on the subject of Plaintiff's alleged injuries and their cause … ." (Doc. 149-5 at 1). Indeed, Cottrell thoroughly cross-examined the doctors on their causation opinions during their depositions.

Cottrell's motions to exclude the doctors' testimony as a sanction for a Rule 26 disclosure violation will be denied.

7

### III.   RULE 702 ADMISSIBILITY

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The rule was amended in 2000 in response to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), which charged trial judges with a "gatekeeping" role to screen expert testimony for relevance and reliability. *Id*. at 590-93; *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012).  To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue. *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010).  To satisfy the reliability requirement, the party offering the expert testimony "must show by a preponderance of the evidence that the expert is qualified to render the opinion and the methodology underlying his conclusions is scientifically valid." *Id.* (citing *Daubert*, 509 U.S. at 589-590).

A district court has "great latitude" in determining whether expert testimony meets the requisites of Rule 702. *Allen v. Brown Clinic, P.L.L.P.*, 531 F.3d 568, 573 (8th Cir. 2008).  In ascertaining whether expert testimony will reliably aid the trier of fact, the Court should examine factors pertinent to the case, including whether the proposed expert sufficiently connects the proposed testimony with the facts of the case. *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009)

The Court in *Daubert* emphasized that the inquiry required by Rule 702 is intended to be flexible. 509 U.S. at 594. Accordingly, the Eighth Circuit has held that expert testimony should be liberally admitted, with any doubts resolved in favor of admissibility. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014). "As long as the expert's testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process with competing expert testimony and cross–examination, rather than excluded by the court at the outset." *Id*. (citing Daubert, 509 U.S. at 590.

Cottrell asserts that the doctors' causation opinions are (1) irrelevant because they do not help the trier of fact determine whether Cottrell's product caused Burdess's injuries and (2) unreliable because they are not based on sufficient facts.

    a. **Dr. Emanuel**

        i. <u>Relevance</u>

Cottrell argues that Dr. Emanuel's opinions are irrelevant because they do not specifically attribute Burdess's injuries to Cottrell's chain and ratchet system; rather, Emanuel generally opined that Burdess's job duties aggravated pre-existing degenerative changes. In support of its position, Cottrell cites several railroad worker injury cases brought under the Federal Employers' Liability Act instructing that expert testimony is necessary to establish causation where the injury is alleged to be a result of cumulative trauma from repetitive work. *See e.g., Ackman v. Union Pac. R.R. Co.*, 556 S.W.3d 80, 85 (Mo. App. E.D. 2018) (affirming summary judgment where medical records did not attribute plaintiff's back problems to his work); *Payton v. Union Pac. R. Co.*, 405 S.W.3d 1, 6 (Mo. App. E.D. 2013) (affirming directed verdict where no expert identified loose cab seats violating safety regulations as the cause of plaintiff's degenerative disk disease).

9

But these cases only confirm the relevance of Emanuel's testimony. Here, in contrast to *Ackman* and *Payton*, Emanuel specifically attributed Burdess's shoulder problems to his overhead work and further opined that the hand gripping and elbow flexing and extending required to operate the ratchet could contribute to carpal and cubital tunnel syndrome. (Doc. 139-1 at 14). The fact that Emanuel did not identify Cottrell's product as the particular ratchet on Burdess's rig is not fatal. As the Court understands it, Burdess intends to establish that fact through other evidence, and his engineering expert will testify that all chain and ratchet system require the same high levels of force. Emanuel's opinion still assists the trier of fact in determining whether Burdess sustained repetitive trauma injuries as a result of the exertions required to operate the system on his rig.

    ii.  <u>Reliability</u>

Cottrell asserts that Emanuel's opinions are unreliable because they lack any factual basis. More specifically, Emanuel has never operated a ratchet system, he did not know how it worked or what level of force was required, he made assumptions about the task and the percentage of work time performing it, and he failed to conduct a differential diagnosis to rule out other causes. Instead, he "ruled in" factors such as degenerative changes and work duties unrelated to the ratchet.

In support of its position, Cottrell relies on *Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893 (8th Cir. 2008). There, the plaintiff inadvertently inhaled freon and was later diagnosed with asthma. Her doctor attributed her symptoms to the freon solely based on the "strong temporal relationship." *Id*. at 896. The district court excluded this opinion and the Eighth Circuit affirmed, because the doctor failed to rule out other causes, could not determine the amount of exposure, did not know what amount would be sufficient to cause asthma, and had not treated other patients with similar exposure. *Id*. at 897.

The Court does not find *Bland* instructive on the present record. Here, Emanuel

specifically ruled out hobbies or other activities as the source of injury and also ruled out degenerative changes as the source of Burdess's bursitis, opining that his job duties, particularly the overhead work, aggravated his degenerative conditions to the point where they became symptomatic and unresponsive to conservative treatment. (Doc. 139-5 at 2-4). Additionally, Emanuel's opinion is based on far more information than what was noted in *Bland*. Emanuel was familiar with the work of car haulers from seeing video in the context of other work comp cases. (Doc. 139-1 at 11). Emanuel knew that a significant portion of Burdess's job activities over the preceding 25 years involved strenuous gripping, lifting, and overhead pull-down motions. He reviewed Burdess's medical records from other treating physicians, including imaging reports. Cottrell's suggestion that an unretained physician must study the mechanical design of a patient's work apparatus in order to opine on the cause of his injuries is not reasonable. The Court does not find Emanuel's testimony wholly unreliable simply because he did not know the percentage of time or level of force Burdess applied to the ratchet. Cottrell will have an opportunity to test the bases of Emanuel's opinions on cross-examination.

Cottrell's motion to exclude Dr. Emanuel's causation opinions will be denied.

**b. Dr. Rotman**

i. <u>Relevance</u>

Cottrell's motion to exclude Dr. Rotman's opinions is virtually identical to its motion regarding Dr. Emanuel. Cottrell argues that Rotman's causation opinion is irrelevant because he does not specifically attribute Burdess's injuries to Cottrell's chain and ratchet system; rather, Rotman opined that Burdess's job duties and overhead work aggravated pre-existing conditions. Again, Cottrell relies on *Ackman* and *Payton* for the proposition that expert testimony is required to establish causation involving repetitive trauma injuries. And again, the Court finds Rotman's

11

opinions relevant to assist the trier of fact in determining whether Burdess's operation of the ratchet caused his conditions. Rotman's inability, as an orthopedic surgeon, to connect Cottrell's product to Burdess's rig does not render his medical opinions irrelevant. Burdess may identify the product through other evidence.

   ii. <u>Reliability</u>

Similarly, Cottrell contends that Dr. Rotman's opinions are factually unsupported that thus unreliable because Rotman could not distinguish between manufacturers, did not know what levels of force would cause injury, did not know when Burdess's injuries occurred or what he was driving at the time, did not rule out other causes, and relied on Burdess's self-report that he performed 90% of his work overhead. Invoking *Bland*, Cottrell argues that Rotman lacked a sufficient basis or methodology to support his opinions. The Court does not agree.

Rotman interviewed and examined Burdess, reviewed his medical records and imaging, and performed his multiple surgeries. Rotman had previously served as a company doctor for another car hauler and had watched videos of drivers tying down cars; he was very familiar with their activities. He also reviewed Burdess's deposition and understood that strenuous overhead work was a significant aspect of securing the cars, separate from hours spent driving. He observed that Burdess's shoulder pain subsided while off work and returned when he resumed. He specifically ruled out systemic illnesses. The fact that Rotman was untrained in biomechanics and performed no analysis of the ratchet system does not render his medical opinions wholly unreliable. Cottrell does not dispute Rotman's qualifications, and his opinions as to the cause of Burdess's conditions are informed by sufficient facts developed in the course of treatment. Again, Cottrell's suggestion that Burdess's unretained treating physicians should have examined his rig in order to opine on the cause of his injuries is not well-taken. The Court finds Rotman's opinions

sufficiently reliable. Cottrell may explore his methodology on cross-examination.

Cottrell's motion to exclude Dr. Rotman's causation opinions will be denied.

### c. Dr. Larkin

Cottrell's motion to exclude Dr. Larkin's causation opinion testimony resembles those regarding Drs. Rotman and Emanuel. Larkin opined that Burdess's work was the prevailing factor in his initial pain but that his continued symptoms were attributable to degenerative changes. Cottrell asserts that Larkin's opinion is irrelevant because he does not identify Cottrell's product as the source of injury. With respect to reliability, Cottrell argues that Larkin made no effort to ascertain whether Burdess had pre-existing conditions, had no knowledge of Burdess's job or Cottrell's product, and failed to rule out other causes.

For the same reasons previously stated, the Court finds Cottrell's arguments unpersuasive. Burdess's unretained physicians were not required to analyze the design and function of Cottrell's product and connect it to Burdess's rig for purposes of litigation, and Emanuel specifically identified degenerative changes as another cause of Burdess's conditions. Emanuel's opinions are relevant to assist the trier of fact in determining whether Burdess sustained repetitive trauma injuries as a result of the exertions required to operate the ratchet and/or to what extent his conditions might be attributable to degenerative conditions.

With respect to reliability, Larkin interviewed and examined Burdess, reviewed his records and imaging, and performed clinical tests. The Court finds Larkin's opinions premised on sufficient facts and methodology to be admissible. Cottrell will have an opportunity at trial to question Larkin about any perceived deficiencies in his evaluations.

Cottrell's motion to exclude Dr. Larkin's causation opinions will be denied.

## IV. CONCLUSION

The Court finds that the opinions of Drs. Emanuel, Rotman, and Larkin will provide relevant and reliable information that will assist the jury in resolving the issues in this case.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Cottrell's motions to exclude the testimony of Drs. Emanuel, Larkin, and Rotman are **DENIED**. (Doc. 139, 140, 141).

Dated this 3rd day of July, 2023.

*/s/ John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE