UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GREGORY L. BURDESS and LISA BURDESS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )  Case No. 4:17-CV-01515-JAR |
| COTTRELL, INC., | ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's motion for summary judgment in this product liability case. For the reasons discussed below, the motion will be denied.

**I.   BACKGROUND**

Plaintiff Gregory Burdess worked as a car hauler for 25 years, loading cars on trailers and transporting them throughout the country. Defendant Cottrell designs and manufactures the trailer at issue in this case. To secure cars on a trailer, Burdess operated a chain and ratchet winch system on the trailer requiring him to reach overhead and pull down a tie bar using significant force. Burdess performed this forceful overhead pull-down motion repetitively throughout his employment.

On April 5, 2013, at age 54, while traveling in Illinois on a job, Burdess woke up unable to move his arms due to numbness. He sought medical treatment and was diagnosed with bilateral rotator cuff impingement and bilateral carpal and cubital tunnel syndrome. After conservative treatment proved ineffectual, Burdess underwent multiple surgeries to both upper extremities. Burdess's treating physicians noted some degenerative changes but opined that his work was the prevailing factor in his injuries, with the overhead motion particularly affecting

1

his shoulders.

In June 2013, Burdess filed a claim against his employer for workers' compensation. That case was later resolved through settlement. In May 2017, Burdess and his wife filed the present personal injury lawsuit alleging that Cottrell's chain and ratchet system was the cause of his injuries. Plaintiffs assert claims on theories of strict liability (*i.e.*, defective design) (Count I), negligence (Count II), breach of implied warranty (Count III), and loss of consortium (Count IV). They also seek punitive damages for Cottrell's alleged disregard for employee safety in pursuit of profits (Count V).

Cottrell now moves for summary judgment on numerous grounds. The facts in the record are summarized below as relevant to each theory.

## II.   LEGAL STANDARDS

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of demonstrating there are no genuine issues of material fact rests on the moving party, and the Court considers the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015). To avoid summary judgment, the nonmovant must present evidence sufficiently supporting the disputed material facts such that a reasonable jury could return a verdict in their favor. *Gregory v. City of Rogers, Ark.*, 974 F.2d 1006, 1010 (8th Cir. 1992). Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v.*

2

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Combs v. Cordish Cos.*, 862 F.3d 671, 680 (8th Cir. 2017).

## III. DISCUSSION

### a. Product Identification

First, Cottrell asserts that Burdess cannot identify the specific product that allegedly caused his injuries. When asked in discovery to identify which Cottrell trailers he used, Burdess referred Cottrell to his employer, but the summary judgment record does not contain any business records from Burdess's employer submitted by either party. In his deposition, Burdess testified that he worked on Delavan rigs from 1988 until the late 1990s. Beginning around 2001, he worked on five or six different Cottrell rigs, all having quick-release ratchets with the same tie-down process. (Doc. 134-1 at 43, 48, 159). Burdess's expert witness, Dr. Gerald Micklow, explained that all ratchet systems require excessive force levels, though the quick-release system facilitates untying. (Doc. 134-2 at 6). Burdess could not identify the specific truck or trailer number of the rig he was driving in April 2013, but he knew that it was a Sterling flat top Cottrell trailer, which was his bid truck at the time. (Doc. 134-1 at 81). When shown his injury report, Burdess identified truck number 1295 and trailer number 1296 as the rig he was operating then. (*Id*. at 153). Cottrell's corporate representative, Melanie Stone, identified two rigs known to be driven by Burdess, including the one identified in the accident report, and both being 2004 CS-12-M3 rigs with the same chain and ratchet tie-down system. (Doc. 154-14 at 5).

Cottrell moves for summary judgment asserting that Burdess has failed to identify the specific rigs he used over his career, including all manufacturers, models, designs, and conditions. In support of its position, Cottrell relies on *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d

3

110 (Mo. 2007), where the city sued several paint manufacturers to recover the cost of lead abatement projects in residential housing. The city could not specifically identify the manufacturer of the paint abated from the subject properties but sought to establish liability based on the defendants' respective market shares. The Missouri Supreme Court affirmed summary judgment for the defendants reasoning that, absent product identification evidence, the city could not prove actual causation. *Id*. at 115-16. *See also Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241 (Mo. 1984) (affirming summary judgment where the plaintiffs could not identify which pharmaceutical manufacturer produced the generic drug they each ingested).

Applying these cases to the present facts, Cottrell argues that Burdess's claims should fail in similar fashion because Burdess drove Delavan rigs without quick release systems from 1988 to 2001, and neither Burdess nor his experts could identify which specific Cottrell products allegedly caused his injuries. The Court does not subscribe to this analogy. Unlike in *Benjamin Moore* and *Zafft*, where the plaintiffs could not identify which manufacturer's product was ingested at a particular site or by a particular patient, here, the record reflects that Burdess drove only Cottrell rigs, all with the same ratchet system, in the twelve years leading up to his repetitive trauma injuries. Nothing in the record refutes this. While Burdess injury report and his employer's fleet records are inexplicably absent from the summary judgment record, it would appear from the deposition testimony that such evidence exists. Most notably, Burdess and Ms. Stone relied on injury or accident reports to identify trailer number 1296 and rig model 2004-12-M3 corresponding to the relevant period.

Viewing the record in the light most favorable to Burdess, the Court finds the evidence sufficient to give rise to a triable question of fact as to the source of his injuries.

### b. Defective Design

Under Missouri law, a plaintiff asserting a claim for strict liability must show that the product was unreasonably dangerous when put to reasonably anticipated use without knowledge of its characteristics. Mo. Rev. Stat. § 537.760(3)(b). Cottrell argues that Burdess advances an unavailing theory of "categorical liability" by characterizing all ratchet systems as defective, as Dr. Micklow opined. Cottrell relies on *Linegar v. Armour of Am., Inc.*, 909 F.2d 1150 (8th Cir. 1990), where the Eighth Circuit held as a matter of law that an armored vest was not defective or unreasonably dangerous simply because it did not cover more of the body; rather, the product's limitations were "open and obvious." *Id.* at 1154. *See also Richardson v. Holland*, 741 S.W.2d 751, 754 (Mo.App. S.D. 1987) (affirming dismissal in favor of a gun manufacturer).

But these cases involving inherent risks of sudden fatal injury, at times from criminal conduct, are plainly inapposite. This case involves a mechanical winch system that requires repetitive strenuous exertion. While the demands of the job may have been readily apparent to any user, it is not the role of this Court to conclude as a matter of law that the risks of cumulative injury were open and obvious. The question whether a product is unreasonably dangerous must be decided by the jury, applying their collective intelligence and experience to the facts and circumstances of the case. *Lachance v. Am. Home Products Corp.*, 2006 WL 89850, at *5 (W.D. Mo. Jan. 13, 2006) (citing *Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 378 (Mo. 1986)).

Cottrell further suggests that Cottrell's ratchet system could not be deemed unreasonably dangerous because Burdess's labor union endorsed the use of quick-release ratchets in its collective bargaining agreement. (Doc. 133-7 at 10). This theory has been rejected on numerous occasions; the Court need not revisit it. *See e.g., Taylor v. Cottrell*, 995 F. Supp. 2d 1052, 1056

5

(E.D. Mo. 2014) (denying summary judgment based on preemption under the Labor Management Relations Act, reasoning that the CBA between plaintiff's union and employer did not define the standard of care or Cottrell's state law duty to provide safe products); *Stanley v. Cottrell, Inc.*, 2013 WL 466262, at *4 (E.D. Mo. Feb. 7, 2013) (same); *Miller v. Cottrell, Inc.*, 2015 WL 4644346, at *2 (E.D. Mo. Aug. 4, 2015) (granting remand because the plaintiff's claim did not depend on any interpretation of the CBA); *Hale v. Cottrell, Inc.*, 2012 WL 13028556, at *3 (W.D. Mo. Apr. 17, 2012) (same); *Johnson v. Auto Handling Corp.,* 857 F. Supp. 2d 848, 851 (E.D. Mo. 2012) (same).

Viewing the record in the light most favorable to Burdess, the Court finds the evidence sufficient to give rise to a jury question as to defective design.

**c. Medical Causation**

Next, Cottrell contends that the record lacks evidence that its product caused Burdess's repetitive trauma injuries. Burdess's orthopedic surgeon, Dr. Mitchell Rotman, opined that Burdess's conditions were caused by his use of the ratchet system on his trailer. (Doc. 141-6 at 8, 10-11). Another orthopedic specialist, Dr. James Emanual, explained that carpel tunnel syndrome is related to power gripping, lifting, pushing, and pulling. (Doc. 139-1 at 3). He confirmed that Burdess's shoulder condition was related to overhead work, including pulling down the tie-down bar. (*Id*. at 6, 8). He stated that trigger finger is typically seen in patients who do power gripping and repetitive work with the hands and wrists. (*Id*. at 9). His impression from Burdess was that operating the tie-down bar particularly bothered his shoulders. (*Id*. at 14). Emanuel added that the gripping and forceful flexing and extending of the elbow required in the maneuver could also contribute to carpal and cubital tunnel syndrome. (*Id*.).

Both Rotman and Emanuel conceded that they had no specific knowledge about Cottrell's

6

or any other manufacturer's ratchet system. Rotman assumed they were similar with respect to overhead work. (Doc. 141-6 at 17). Emanuel clarified that one mechanism over another would not make a difference; rather, it is the actual force and repetitive nature of the task that causes the injury. (Doc. 139-1 at 18). Cottrell thus argues that the record lacks the requisite expert testimony establishing medical causation because Burdess's physicians could not attribute his injuries to its specific product. In support of its position, Cottrell cites several railroad worker injury cases brought under the Federal Employers' Liability Act instructing that expert testimony is necessary to establish causation where the injury is alleged to be a result of cumulative trauma from repetitive work. *See e.g., Ackman v. Union Pac. R.R. Co.*, 556 S.W.3d 80, 85 (Mo. App. E.D. 2018) (affirming summary judgment where medical records did not attribute plaintiff's back problems to his work); *Payton v. Union Pac. R. Co.*, 405 S.W.3d 1, 6 (Mo. App. E.D. 2013) (affirming directed verdict where no expert identified loose cab seats violating safety regulations as the cause of plaintiff's degenerative disk disease).

But these cases only confirm the impropriety of summary judgment here. In contrast to *Ackman* and *Payton*, Dr. Emanuel specifically attributed Burdess's shoulder problems to his overhead work and further opined that the hand gripping and elbow flexing and extending required to operate the ratchet could contribute to carpal and cubital tunnel syndrome. (Doc. 139-1 at 14). Dr. Rotman opined that Burdess's problems were caused by his use of the chain and ratchet system on his trailer. (Doc. 141-6 at 8, 10-11). Dr. Micklow opined that Cottrell's ratchet system is defective in design because it requires the operator to us excessive levels of overhead pull-down force. Cottrell's suggestion that unretained physicians must identify the make and model of a patient's work implement in order to opine on the cause of his injuries is not reasonable. Even the fact that Dr. Micklow could not identify Cottrell's product as the particular ratchet on Burdess's

7

rig, aside from Burdess's own account, does not entitle Cottrell to summary judgment. Cottrell's argument only underscores the existence of genuine issues of material fact to be resolved by a jury as to whether Burdess sustained repetitive trauma injuries as a result of exertions required to operate a Cottrell ratchet system. Indeed, the Eighth Circuit opined as much in this very case. "There are certainly facts … that suggest that a causal connection between Burdess's bilateral shoulder impingement and his use of Cottrell's tie-down ratchet system was capable of ascertainment prior to [his diagnosis]." *Burdess v. Cottrell, Inc.*, 53 F.4th 442, 451 (8th Cir. 2022).

Viewing the record in the light most favorable to Burdess, the Court finds the evidence sufficient to raise a jury question on medical causation.

### d. Failure to Warn

Missouri law applies a two-pronged causation test to failure to warn claims. *Miller v. Cottrell, Inc.*, 2007 WL 3376731, at *5 (W.D. Mo. Nov. 8, 2007) (citing *Mothershead v. Greenbriar Country Club, Inc.*, 994 S.W.2d 80, 89 (Mo. App. E.D. 1999)). The first prong requires proof of a proximate causal link between the plaintiff's injury and the product allegedly lacking a warning. The second prong requires the plaintiff to show that a warning would have altered his behavior. *Id.* If a jury could find that the plaintiff did not already know of the danger, it is presumed that a warning would have been heeded. *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 762 (Mo. 2011); *Miller*, 2007 WL 3376731, at *5.

Cottrell moves for summary judgment on Burdess's failure-to-warn claim arguing that the record lacks evidence supporting the second prong. Specifically, in his deposition, Burdess said he had never seen or read any operator's manual or warning labels on his rigs, and he was not aware of any warning that would have prevented his injury. (Doc. 145-2 at 29-30, 32). Cottrell submits that these statements preclude a finding that a warning may have altered Burdess's

8

behavior. But the Court cannot make that conclusion as a matter of law. A jury could reasonably infer that Burdess was simply unaware of any warnings about the ratchet, or that he believed that no warning could have prevented his injury given the nature of the work. It is not the role of this Court to speculate whether and how Burdess might have heeded a warning had he seen one. These are questions for a jury to resolve. *Moore*, 332 S.W.3d at 763 (reversing directed verdict and noting that whether a plaintiff would have heeded a warning is a credibility determination for the jury).

In its reply brief, Cottrell raises the new argument that Burdess cannot establish what warnings were provided because he has not identified which rigs he operated during the relevant period. A party cannot raise a new issue in a reply brief because it deprives the opposing party an opportunity to respond. *Walker v. Kemper*, 2005 WL 8169209, at *16 n.8 (E.D. Mo. May 31, 2005). Moreover, Cottrell bears the burden of showing the absence of disputed facts, and the Court must view the record in the light most favorable to Burdess and resolve any conflict against the movant. Mindful of these standards and given the minimal record on this issue, the Court does not decide it as a matter of law and defers to the jury to weigh the evidence presented at trial.

Viewing the evidence and reasonable inferences in the light most favorable to Burdess, Cottrell cannot carry its burden to demonstrate that there are no genuine issues of material fact in dispute on this issue.

    **e. Implied Warranty**

In Missouri, there are three theories of recovery available to a plaintiff in a products liability case: strict liability, negligence, and breach of warranty. *Becker v. Ford Motor Co.*, 2010 WL 11582979, at *3 (E.D. Mo. Sept. 24, 2010). To recover on a claim of breach of implied warranty, a plaintiff must demonstrate (1) that defendant sold goods which were not "merchantable" at the

9

time of sale; (2) that an injury resulted that was proximately caused by the defective nature of the goods; and (3) notice to the seller. *Id*.

Cottrell asserts that Burdess's alternate claim for breach of implied warranty is time-barred under Missouri's four-year statute of limitations on contracts for sale. Mo. Rev. Stat. § 400.2-725(2). Burdess correctly responds that Missouri's five-year statute of limitations for personal injury actions applies here. Mo. Rev. Stat. § 516.120. *Chole v. Boston Sci. Corp.*, 2020 WL 1853266, at *2 (E.D. Mo. Apr. 13, 2020) (citing *Witherspoon v. General Motors Corp.*, 535 F. Supp. 432, 434 (W.D. Mo. 1982)). *See also Hollifield v. Ford Motor Co.*, 2007 WL 9718133, at *3 (W.D. Mo. May 1, 2007) (noting that a breach of warranty claim requests relief on a products liability theory). Cottrell's attempt to characterize this issue as unsettled is unavailing.

Cottrell also asserts that any implied warranties were disclaimed. But the record lacks sufficient evidence for the Court to make that determination as a matter of law. With respect to the prima facie elements of Burdess's warranty claim, the record does present factual disputes as to whether Cottrell's product was merchantable and whether it proximately cause Burdess's injuries. As such, summary judgment is not warranted.

**IV.   CONCLUSION**

Summary judgment is proper when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The record in this case presents numerous factual disputes to be resolved by a jury.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Cottrell's motion for summary judgment is **DENIED**.  (Doc. 133).

Dated this 10th day of July, 2023.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE