UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY L. BURDESS and<br>LISA BURDESS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-01515-JAR |
| | ) | |
| COTTRELL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's motion for summary judgment on

Plaintiffs' claim for punitive damages in this product liability case.  For the reasons discussed

below, the motion will be denied.

## I.   BACKGROUND

Plaintiff Gregory Burdess worked as a car hauler for 25 years, loading cars on trailers and

transporting them throughout the country.  Defendant Cottrell designs and manufactures the

trailer at issue in this case.  To secure cars on a trailer, Burdess operated a chain and ratchet

winch system on the trailer requiring him to reach overhead and pull down a tie bar using

significant force.  Burdess performed this forceful overhead pull-down motion repetitively

throughout his employment.

On April 5, 2013, at age 54, while traveling in Illinois on a job, Burdess woke up

unable to move his arms due to numbness.  He sought medical treatment and was diagnosed

with bilateral rotator cuff impingement and bilateral carpal and cubital tunnel syndrome.  After

conservative treatment proved ineffectual, Burdess underwent multiple surgeries to both upper

extremities.  Burdess's treating physicians noted some degenerative changes but opined that

his work was the prevailing factor in his injuries, with the overhead motion particularly affecting his shoulders.

In June 2013, Burdess filed a claim against his employer for workers' compensation. That case was later resolved through settlement.  In May 2017, Burdess and his wife filed this personal injury lawsuit alleging that Cottrell's chain and ratchet system was the cause of his injuries.  Plaintiffs assert claims on theories of strict liability (*i.e.*, defective design) (Count I), negligence (Count II), breach of implied warranty (Count III), and loss of consortium (Count IV).  They also seek punitive damages for Cottrell's alleged disregard for employee safety in pursuit of profits (Count V).  By the present motion, Cottrell seeks summary judgment on Plaintiffs' claim for punitive damages, asserting that the record lacks sufficient evidence of malice or reckless indifference to support a punitive award.

## II.      LEGAL STANDARDS

### Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden of demonstrating there are no genuine issues of material fact rests on the moving party, and the Court considers the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).  To avoid summary judgment, the non-movant must demonstrate the existence of specific facts supported by sufficient probative evidence that would permit a finding in his favor on more than speculation.

*Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017).  Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Combs v. Cordish Cos.*, 862 F.3d 671, 680 (8th Cir. 2017).

**Punitive Damages**

Under Missouri Law,[1] the "test for punitive damages in a products liability case is a strict one."  *Jone v. Coleman Corp.*, 183 S.W.3d 600, 610 (Mo. App. E.D. 2005) (citing *Bhagvandoss v. Beiersdorf, Inc.*, 723 S.W.2d 392, 397 (Mo. 1987).  The plaintiff must show (1) some element of outrageous conduct by the defendant and (2) that the defendant acted with a willful, wanton, or malicious culpable mental state.  *Poage v. Crane Co.*, 523 S.W.3d 496, 516 (Mo. App. E.D. 2017).

"Under both negligence and strict liability theories, the plaintiff must demonstrate that the defendant showed a complete indifference to or conscious disregard for the safety of others." *Jone,* 183 S.W.3d at 610.  However, the requisite knowledge under each theory differs.  In a negligence action, punitive damages may be awarded if the defendant *knew or had reason to know* a high degree of probability existed that an action would result in injury.  *Poage*, 523 S.W.3d at 515.  In a strict liability action, punitive damages can be awarded if the plaintiff establishes that the defendant placed into commerce an unreasonably dangerous product, with *actual knowledge* of the product's defect.  *Id.*

---

[1]     The parties appear to agree that Missouri law applies.

Additionally, punitive damages require clear and convincing proof. *Id.* (citing *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 111 (Mo. 1996) (explaining that punitive damages require a higher standard of proof because they are "extraordinary and harsh")). The clear and convincing standard requires evidence that "instantly tilts the scales" when weighed against evidence in opposition. *Koon v. Walden*, 539 S.W.3d 752, 773 (Mo. App. E.D. 2017).

In short, a submissible case of punitive damages is made if the evidence and inferences drawn therefrom are "sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity—that is, that it was highly probable—that the defendant's conduct was outrageous because of evil motive or reckless indifference." *Poage*, 523 S.W.3d at 515-16 (citation omitted).

## III.    DISCUSSION

Cottrell argues that the record lacks clear and convincing admissible evidence of malice or evil motive as required by Missouri law. Cottrell further submits that the evidence does not show conduct rising to the level of reprehensibility required under the Fourteenth Amendment to the U.S. Constitution. The relevant evidence in the record consists of industry and expert reports spanning several decades. Overall, these documents establish that Cottrell and its competitors have been aware of the high rate of injury related to the tie-down process since the 1970s.

The Miller report, in which Cottrell participated, revealed that 50% of industry injuries in 1977 involved tightening or loosening chains. The Carr report of 1993 indicated that levels of force required to tie down vehicles ranged from 100 to 280 pounds, with an average of 219. The Leaseway report of 1996, to which Cottrell contributed, contained a cost-benefit analysis discussing various solutions to the problem of increasing workers' compensation claims. According to that report, replacing the ratchet system with a pulley system would have reduced

tie-down injuries by 90% at a cost of $12.8 million over six years.  (Doc. 147-30 at p. 353).

Alternatively, a gear reduction ratchet kit installed in existing systems would have reduced tie-

down injuries by 65% with a cost savings of $2,776,455 over six years.  (*Id*. at p. 355).  As the

Court understands it, Leaseway undertook pilot programs involving the reduction ratchet and

longer tie-bars.  (*Id*. at p. 356-57).  In his expert report, Dr. Gerald Micklow noted that haulers in

Europe use wheel straps as a safer alternative.  (Doc. 134-2 at p. 6).

Cottrell asserts that the evidence fails to demonstrate malice or reprehensibility,

particularly insofar as a collective bargaining agreement between Burdess's union and employer

required the use of quick-release ratchets.  In response, Plaintiff argues that the evidence of

Cottrell's actual knowledge of the high risk of injury and failure to adopt safer mechanisms is

sufficient to submit the question of intent to a jury, and the collective bargaining agreement to

which Cottrell is not a party does not determine the standard of care.  Plaintiff cites numerous

cases against Cottrell where courts have permitted claims for punitive damages to proceed.  *See

e.g., Taylor v. Cottrell*, 995 F. Supp. 2d 1052, 1057 (E.D. Mo. 2014); *Stanley v. Cottrell, Inc.*,

2013 WL 466262, at *4 (E.D. Mo. Feb. 7, 2013); *Poulter v. Cottrell, Inc.*, 50 F. Supp. 3d 953,

964 (N.D. Ill. 2014); *Miller v. Cottrell*, 2007 WL 3376731, at *7-8 (W.D. Mo. Nov. 8, 2007).

This Court likewise finds the evidence sufficient to survive summary judgment.  The

documentary record establishes that Cottrell has long known of the rates of injury attributable to

the chain and ratchet tie-down process and the existence of available remedies.  Whether

Cottrell's failure to adopt safer alternatives amounts to reckless indifference is a question for the

jury to decide.

**IV.     CONCLUSION**

Summary judgment is proper when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Viewing the evidence in the light most favorable to Plaintiffs, the Court finds sufficient evidence in the record to give rise to a potential jury question as to Cottrell's indifference to or conscious disregard for employee safety.  As such, summary judgment is not warranted.  However, the Court will grant Cottrell's alternative motion to bifurcate the trial on this issue.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Cottrell's motion for summary judgment on Plaintiff's Count V for punitive damages is **DENIED**.  (Doc. 137).

Dated this 5th day of September, 2023.

_____

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE