UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GREGORY L. BURDESS and <br> LISA BURDESS, <br><br> Plaintiffs, <br><br> v. <br><br> COTTRELL, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 4:17-CV-01515-JAR <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion For Ruling on Previously Filed Motion. ECF No. 170. They request the Court to rule on the merits of their February 2021 Motion to Bar Defendant's Expert George Widas. *See* ECF No. 61. For the following reasons, the Court will grant Plaintiffs' Motion for Ruling on Previously Filed Motion and exclude Widas's testimony.

I. **BACKGROUND**

Plaintiff Gregory Burdess worked as a car hauler for 25 years, loading cars on trailers and transporting them throughout the country. Defendant Cottrell designs and manufactures the trailer at issue in this case. To secure cars on a trailer, Burdess operated a chain and ratchet system on the trailer requiring him to reach overhead and pull down a tie bar using significant force. Burdess performed this overhead pull-down motion repetitively throughout his employment.

In April 2013, at age 54, while traveling in Illinois on a job, Burdess woke up unable to move his arms due to numbness. He sought medical treatment and was diagnosed with bilateral rotator cuff impingement and bilateral carpal and cubital tunnel syndrome. In May 2017,

Burdess and his wife filed the present personal injury lawsuit alleging that Cottrell's chain and ratchet system was the cause of his injuries.  Plaintiffs assert claims on theories of strict liability (*i.e.*, defective design) (Count I), negligence (Count II), breach of implied warranty (Count III), and loss of consortium (Count IV).  They also seek punitive damages for Cottrell's alleged disregard for safety in pursuit of profits (Count V).

Cottrell retained George Widas to provide expert testimony on a variety of topics, but Widas's credentials and experience primarily relate to engineering and ergonomics.  Widas provided two expert reports in this case: a January 4, 2021, Report (ECF No. 61-1) and a January 27, 2021, Supplementary Report (ECF No. 96-1) which addressed two deposition transcripts that Widas received after he completed his January 4, 2021, Report.  Plaintiffs filed a motion to exclude Widas's testimony based on the contents of Widas's January 4, 2021, Report.

Widas's January 4, 2021, Report can be divided into three sections.  The first section lists discovery materials and various other sources.  ECF No. 61-1 at 1-7.  The second section, titled "Observations," lists factual observations from the record in this case, car-hauling equipment instruction manuals, Burdess's employers' policies on proper equipment operation (as well as an unrelated company's policy on chain and ratchet operation), and various other texts.  *Id.* at 8-37.  This section also describes what appears to be an experiment conducted by Widas in which he observed how much force was used to ratchet down an "exemplar vehicle" on "exemplar auto transport rigs" and the duration of time it took to ratchet down a single tie down point.  *Id.* at 15.  The final pages of this section also contain several criticisms of Plaintiffs' design expert, Gerald Micklow.  *Id.* at 32-36.

The third section, titled "Conclusions," contains fifty-six stand-alone statements "to a reasonable degree of engineering and scientific certainty," presented in no apparent order.  ECF

No. 61-1 at 37. These statements concern a variety of subjects, such as the dearth of information Burdess provided about his injuries, Burdess's state of mind while he operated the chain and ratchet system, Burdess's employers' training on proper tie down technique, the maximum amount of time Burdess would have spent exerting force on a tie-down bar in an eight-hour workday, other activities that could have caused Burdess's injuries, and Burdess's right to refuse to work in an unsafe condition. Critically, Widas opined that "[t]here is no reasonable probability for repetitive stress injury to Gregory Burdess from his auto hauler activities[.]" *Id.* at 38.

In February 2021, the parties filed several *Daubert* motions, including Plaintiffs' motion to exclude Widas's testimony. ECF No. 61. The Court denied Plaintiff's motion as moot because it found that Plaintiffs' claims were time-barred and Cottrell was entitled to summary judgment. ECF No. 115. The Eighth Circuit reversed, however, and the Court ordered the parties to refile any unresolved dispositive motions or *Daubert* motions by February 10, 2023.

Cottrell timely refiled several of its motions, but Plaintiffs did not. Instead, after the Court ruled on some of Cottrell's properly refiled motions, Plaintiffs filed the present motion for the Court to rule on its earlier motion to exclude Widas's testimony. They argue that the Court should consider their untimely motion because their motion to exclude Widas's testimony is meritorious and a ruling could streamline the trial.

Cottrell did not initially respond to Plaintiffs' Motion for Ruling on Previously Filed Motion, and Plaintiffs did not provide any additional briefing in support of their motions. As a result, the briefing on Plaintiffs' motion to exclude Widas's testimony consisted entirely of the parties' memoranda from February 2021. The Court accordingly requested additional briefing

from the parties on Plaintiffs' motions in light of amendments to Federal Rule of Evidence 702 that became effective in December 2023.  Plaintiffs and Defendant have now filed those briefs.

In their memoranda, Plaintiffs argue that Widas's testimony must be excluded because: (1) Widas's January 4, 2021, Report is merely preliminary and does not provide a complete statement of his opinions, (2) Widas impermissibly attacks the credibility of Dr. Micklow, (3) Widas lacks qualifications to testify at all in this case but particularly on Burdess's state of mind and the cause of his injuries, and (4) Widas conclusions about the force necessary to tie down a single tie-down point and the probability of repetitive stress injury are not reliable.

Cottrell responds that Widas's January 4, 2021, Report is a complete statement of his opinions and the bases for his opinions.  They appear to claim that Widas's mechanical engineering expertise allows him to opine on each of the topics challenged by Plaintiffs.  They insist that Widas's description of his methodology in the report satisfies *Daubert* and his conclusions will help a jury understand the forces necessary to operate the ratchet system.

II.     LEGAL STANDARD

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702.  Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The rule was amended in 2000 in response to *Daubert v. Merrell Dow Pharms., Inc.*, 509

4

U.S. 579 (1993), which charged trial judges with a "gatekeeping" role to screen expert testimony for relevance and reliability. *Id.* at 590–93; *see also Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). In order to carry out this gatekeeping role, the Court applies a three-part test to screen expert testimony. First, the testimony must be relevant, that is, it "must be useful to the finder of fact in deciding the ultimate issue of fact[.]" *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021) (citing *Johnson v. Mead Johnson & Co.*, 754 F.3d 557, 561 (8th Cir. 2014)). "Second, the expert must be qualified to assist the finder of fact." *Id.* A designated expert can be qualified by knowledge, skill, experience, training, or education. Fed. R. Evid. 702. If an expert is qualified by experience, that experience must "bear a close relationship to the expert's opinion." *United States v. Ameren Missouri*, 4:11 CV 77 RWS, 2019 WL 1384631, at *1 (E.D. Mo. Mar. 27, 2019) (citing *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009)). "Third, the testimony must be reliable or trustworthy in an evidentiary sense." *In re Bair Hugger Forced Air Warming Devices*, 9 F.4th at 777. When evaluating the scientific validity of a methodology, the Court may consider whether the expert's method has been tested or subjected to peer review and publication, the method's known or potential rate of error, and the method's general acceptance. *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009) (citing *Daubert*, 509 U.S. at 593–94). These factors are not exhaustive, and the Court must evaluate the reliability of expert testimony based on the facts of the case. *Id.*

The determination as to the admissibility of expert testimony is within a district court's sound discretion. *See Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997). In exercising this discretion, the Eighth Circuit has held that expert testimony should be liberally admitted. *Johnson*, 754 F.3d at 562. As long as the expert testimony "rests upon

good grounds, based on what is known, it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Id.* (cleaned up).  Notwithstanding this liberal standard, the Advisory Committee Notes to 2023 amendments to Rule 702 underscore that the proponent of an expert's testimony must first demonstrate that the admissibility requirements have been met before the testimony may be tested by the adversary process.  Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("[M]any courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility.  These rulings are an incorrect application of Rules 702 and 104(a).").  After it has done so, "any attack by the opponent will go only to the weight of the evidence." *Id.*

### III. DISCUSSION

As explained above, Plaintiffs argue that Widas's January 4, 2021, Report is an insufficient statement of his opinions, that Widas impermissibly attacks the credibility of Dr. Micklow, that Widas lacks qualifications to testify, and that Widas's opinions are unreliable.  The Court need not address Plaintiffs' challenges to the sufficiency of Widas's initial report because the Court agrees that Widas's testimony does not meet the requirements of Rule 702 and *Daubert*.  While Widas is qualified to testify in this case, many of his conclusions stray far outside his areas of expertise, and the conclusions that Widas is qualified to render are unsupported.

A. Qualifications

Widas received a bachelor's degree in civil engineering from Syracuse University in 1972.  His curriculum vitae states that he has participated in advanced and continuing engineering education programs in the fields of "human factors & ergonomics," "biomechanics," "risk assessment," and "product design/manufacturing/reliability."  ECF No. 61-2.  He has

6

numerous professional affiliations with organizations such as the American Society of Safety Engineers, the American Society of Civil Engineers, and Human Factors and Ergonomics Society.  *Id.*  And he worked as a Consulting professional engineer from 1980 to 2015.

Plaintiffs argue that Widas is unqualified because he has "no experience or peer reviewed publication in the automotive/or the carhauler trailer manufacturing or design industry" and that he has "no disclosed publications at all."  ECF No. 61 at 5.  But "an expert need not have experience with the particular product at issue to be qualified.  Appropriate engineering background and experience in particular field can be sufficient to qualify the expert."  *Stone & Alter Real Est. Co. v. Hobart Corp.*, No. 4:01CV1582MLM, 2003 WL 25694932, at *3 (E.D. Mo. Mar. 18, 2003).  Here, the Court finds that Widas's engineering degree and experience qualifies him to opine on the force levels and operator ergonomics required by the ratchet system, notwithstanding any purported deficiencies in Widas's publications in the carhauler trailer manufacturing or design industry.

The Court agrees with Plaintiffs, however, that Widas's testimony as reflected in his January 4, 2021, Report strays far outside his areas of expertise.  The Conclusions section of his report begins by stating:

> The conclusions in this report are to a reasonable degree of engineering and scientific certainty, and are based on a review of the facts and data from the sources listed; on the application of the facts from those identified sources to the documented, accepted principles, parameters, and formulae contained in the cited references, standards and texts; and are based on my qualifications, professional training, and professional experience.

ECF No. 61-1 at 37.  But many of the "conclusions" that follow have no apparent relationship to engineering or ergonomics, and many do not appear to be susceptible to "engineering and scientific" verification.

As Plaintiffs note, Widas opines on Burdess's experience and state of mind while operating the chain and ratchet system, including that:

> Gregory Burdess was totally familiar with the physical and functional characteristics of auto transport rigs in general.
>
> Gregory Burdess was educated, trained, experienced and knowledgeable in the specialized and physically demanding job of being an auto transporter.
>
> Gregory Burdess was educated, trained, experienced and knowledgeable in the performance and physical demands of the tie-down process.
>
> Gregory Burdess was educated, trained, experienced and knowledgeable in the proper and safe methods for the tie-down process.
>
> Gregory Burdess voluntarily, knowingly and intentionally assumed the positions and exerted the forces he generated during vehicle securement.
>
> The stabilizing affects [sic] of using the required 3-point or staggered stance and/or proper and adequate force on the tie-down bar, and/or while working with a sound chain and ratchet system that he set up, inspected and used properly, according to his training, knowledge and experience, would have assured Gregory Burdess that he would have been safely supported, and not exposed to positions or forces beyond his capabilities, if he were fit for the job.

ECF No. 61-1 at 40.[1] At other times, Widas speculates on the causes of Burdess's injuries:

> The treating physician characterized the alleged injury as a chronic condition that could have manifested in any number of ways associated with normal life, not necessarily associated with auto hauling.
>
> Other possible causes of the alleged injury claimed by Gregory Burdess include his non-work related activities prior to April 2013 such as horseback riding since about 2004, bailing hay, and other farm-related activities, as well as 4-wheeler riding, hiking and hunting, or otherwise repeated overexertion by Gregory Burdess while he was in awkward positions or stances. Overexertion and awkward positions while performing his work as an auto hauler would be totally contrary to the extensive historical and ongoing training from his employers during this 25 years experience in auto hauling before April 2013.

---

[1] Cottrell argues that Widas was merely citing from Burdess's deposition testimony when he described Burdess's state of mind. "Thus," Cottrell reasons, "when Mr. Widas opined that [Burdess] 'knowingly and intentionally' did something, it was not the expert opinion on what 'others were thinking,' as plaintiffs argue. Rather, it is the expert opinion on what plaintiff admitted saying or believing, based on the evidence from plaintiff about *why* he did or did not do something." ECF No. 79 at 7. (emphasis original). Even if the Court accepted Cottrell's proposed distinction, Cottrell does not show that Widas's engineering degree and experience qualifies him to opine on "what plaintiff admitted saying or believing." Nor does it explain why that expertise would be helpful for the jury to interpret "what plaintiff admitted saying or believing."

*Id.* at 39. And in one conclusion, Widas notes Burdess's right to refuse to work in unsafe conditions, and he appears to draw a negative inference from Burdess's failure to file a grievance for a condition related to an auto hauler rig:

> Gregory Burdess admitted, and the cited employers' training and safety materials stated, that he, through his employers and through the International Brotherhood of Teamsters (IBT) union, was permitted and encouraged to refuse to work in any unsafe condition. He stated he filed numerous grievances "all the time" through the IBT union related to compensation, Gregory Burdess never filed a grievance with respect to any unsafe condition of any auto hauler rig. Further, Gregory Burdess continues to use auto hauler rigs and tie down systems through the present, now for a total of 32 years, without ever filing a grievance for an unsafe condition of any auto hauler rig.

*Id.* at 41.

As the proponent of Widas's testimony, Cottrell bears the burden of demonstrating by a preponderance of the evidence that Widas is qualified to offer these opinions and that his expertise will help the jury determine a relevant fact, but Cottrell does not even attempt to do so. Evidence of Burdess's state of mind, the cause of his injuries, and his grievance filing history can be developed by other means at trial.

B. Reliability

In addition to demonstrating that Widas is qualified, Cottrell must demonstrate that his reasoning is scientifically valid and can be properly applied to the facts of the case. Cottrell is unable to do so because Widas does not link any of his 56 conclusions to any standard, observation, or authority. Instead, he asserts generic conclusions and refers generally to "established criteria and formulate in the cited authorities." For example, Widas concludes,

> There is no reasonable probability for repetitive stress injury to Gregory Burdess from his described auto hauler activities based on the discussions, calculations and details established previously herein where the details of the activities described by Gregory Burdess were applied to the established criteria and formulae in the cited authorities.

9

ECF No. 61-1 at 38.  But Widas does not explain which formulae or criteria he used from the 75 cited authorities in the first section of his report,[2] nor does Widas apply "the details of the activities described by Gregory Burdess" to any equation or formula in any portion of his report.  Widas likewise claims, "[t]he auto transport rig, as designed and manufactured was in conformance with all applicable, accepted safe practices, and in conformance with all applicable standards, as related to the claim of alleged injury." *Id.* at 44.  But again, Widas does not explain which auto transport rig or which standards he refers to.

Without explaining which standards Widas applied to which facts, Cottrell is unable to demonstrate that Widas reliably applied a valid methodology to reach his conclusions.  Widas's testimony has been excluded for the same reason in another products liability case, *Ebenhoech v. Koppers Industies, Inc.*, 239 F. Supp. 2d 455 (D.N.J. 2002).  In that case, Widas listed several sources at the beginning of his report and gave a brief synopsis of those sources over the following pages, "but he never connect[ed] the sources to the facts of th[e] case." *Id.* at 467.  Instead, Widas provided conclusions "couched in broad, general terms," much like he does here. *Id.*  The court accordingly excluded Widas's testimony because Widas's "unexplained citations to design and performance standards do not show that his opinion is reliable." *Id.* at 468.  The same is true here: Widas's general explanation that his conclusions are based on the cited authorities is insufficient to demonstrate that they are reliable.

While none of Widas's conclusions cite any sources or materials in the rest of his report, some of Widas's conclusions appear to be based on an experiment he conducted in which he

---

[2]  At one point in Widas's Observations section he claims that the "Applications Manual for the Revised NIOSH Lifting Equation," provides a revised lifting equation for "assessing the physical stress of two-handed manual lifting tasks," but Widas never actually provides that equation or applies it in his report.  ECF No. 61-1 at 30-31.

observed how much force was used to ratchet down an "exemplar vehicle" on "exemplar auto transport rigs" and the duration of time it took to ratchet down a single tie down point. *Id.* at 15; *See Id.* at 38-39.   Nonetheless, Widas's description of this experiment is likewise insufficient to demonstrate that its results are reliable.  Cottrell claims that "page 15 of his report sets forth his detailed scientific analysis of the chain and ratchet system," but this "detailed scientific analysis" is cursory at best:

> Examination, review, and analyses of exemplar auto transport rigs, tie-down systems, and of file test videos, notes, and photographs, in conjunction with the content of the listed discovery information and testimony, indicated among other things:
>
> . . . .
>
> 3. The suspension of an exemplar vehicle was visibly compressed and the tie down chain tensioned to a solid condition with approximately 60 pounds force exerted on the 38 inches sized tie-down bar.
>
> 4. The actual observed time of exertion of force (duration) on the tie-down bar, after the hook and chain are properly setup, is substantially less than 10 seconds per tie-down point.

ECF No. 61-1 at p. 15.  Widas does not explain which "exemplar auto transport rigs" or "exemplar vehicle" he examined or precisely how he examined them.  As a result, the Court is unable to evaluate whether Widas's "method has been tested or subjected to peer review and publication, the method's known or potential rate of error, and the method's general acceptance." *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009) (citing *Daubert*, 509 U.S. at 593–94).  The Court accordingly concludes that Cottrell has not demonstrated by a preponderance of the evidence that Widas's conclusions are reliable.

## IV.   CONCLUSION

In short, Widas is qualified to testify to the forces and ergonomics involved with the chain and ratchet system.  However, Widas does not confine his conclusions to his areas of expertise; he repeatedly opines on matters unrelated to engineering or ergonomics.  His

11

conclusions that are related to engineering and ergonomics are solely supported by his prefatory statement that his conclusions are based on the cited materials and facts in his report.  There is insufficient connection to demonstrate that his testimony is reliable.  The Court will therefore grant Plaintiffs' Motion for Ruling on Previously Filed Motion and it will exclude Widas's testimony.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Ruling on Previously Filed Motion is **GRANTED** and Widas's testimony is excluded.

Dated this 29th day of February.

*John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE